J. S73007/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                :         PENNSYLVANIA
             v.              :
                :
SAMUEL OKORIE,            :       No. 1854 WDA 2015
                :
         Appellant       :

Appeal from the Judgment of Sentence, July 28, 2015,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0012588-2014

BEFORE: FORD ELLIOTT, P.J.E., LAZARUS AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED NOVEMBER 08, 2016**

Samuel Okorie appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County on July 28, 2015, after his conviction in a waiver trial of one count of kidnapping, two counts of rape, one count of involuntary deviate sexual intercourse, and one count of robbery.[1] The trial court sentenced appellant to an aggregate term of imprisonment of 20 to 40 years. We affirm.

The trial court summarized the facts as follows:

> [O]n the evening of September 6, 2014, [the] 22-year-old [victim] went to the South Side section of the City of Pittsburgh with three female friends to celebrate one girl's birthday. They arrived at 11:30 p.m. and went to the Rowdy Bucks Bar, then to the Jimi Hendrix Bar and returned to the Rowdy

---

[1] 18 Pa.C.S.A. §§ 2901(a)(1), 3121(a)(1), 3123(a)(1), and 3701(a)(1)(v), respectively.

Bucks Bar, where they stayed until closing at 2:00 a.m. [The victim] walked back to the car herself and on the way, she encountered [appellant] who approached her, told her she looked nice and offered her a ride home. She told him she had [a] ride and kept walking. She met her friends at the car and went back to Carson Street briefly with two of them. Eventually all the girls got in the car and left, stopping at the BP Gas Station on 10th Street. Because she was angry at her friends, [the victim] got out of the car and began walking towards the Liberty Tunnel. While she was walking, a car drove up to her and [appellant], who was a passenger, scolded her for not waiting for him to get his car but indicated he could take her home now. [The victim] got into the car and instructed the driver to go through the Liberty Tunnels and turn onto Route 51 South. After exiting the tunnels, the car did not turn onto Route 51, but instead continued up West Liberty Avenue then stopped. [Appellant] pulled [the victim] out of the vehicle and the vehicle drove off. Scared, [the victim] attempted to call a friend, but [appellant] grabbed her cell phone and kept it. [The victim] ran up the street, but [appellant] caught up to her, backed her into the corner of a parking lot behind a van, pushed her down and had intercourse with her. After he was finished, [the victim] got up and tried to walk away, but [appellant] grabbed her arm and took her with him to his residence on Fallowfield Avenue in Beechview. He pushed her into the house and took her into the bedroom, where he ripped off her underwear and had vaginal and anal intercourse with her. Eventually, [the victim] convinced him to let her use the bathroom and she ran out of the house and down the street, knocking on doors until a woman let her in and called 911. Upon the arrival of police, [the victim] directed the officers to [appellant's] residence and later identified him for the police. A search of [appellant's] bedroom revealed [the victim's] cell phone and her panties, which had been ripped in half and thrown in the garbage. [The victim] was transported to Magee Hospital where a rape kit examination was

> performed. Semen was found [in] the vaginal cervix, right genital area and internal rectal swabs and DNA taken from samples was matched to [appellant].

Trial court opinion, 4/12/16 at 4-5.

The record reflects that after imposition of sentence, appellant filed timely post-sentence motions and amended post-sentence motions. The record further reflects that the trial court initially granted appellant's post-sentence motions, but did so as a result of a clerical error. After recognizing that error, the trial court vacated the order granting appellant's post-sentence motions and entered an order denying same. This timely appeal followed.[2]

Appellant raises the following issues for our review:

> 1. Did the Trial Court err when it concluded [appellant's] pretrial statement to police could not be afforded evidentiary weight due to [appellant's] decision not to testify at trial, thus drawing an adverse inference from [appellant's] right not to testify on his own behalf?
>
> 2a. Did the Trial Court err in convicting [appellant] when the testimony of the victim at trial was so markedly inconsistent with previous testimony and statements that the Court concluded it was unbelievable thereby shocking the conscious [sic] and making the conviction against the weight of the evidence?

---

[2] Appellant complied with the trial court's order directing him to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a Rule 1925(a) opinion.

> 2b. Would the evidence presented by the Commonwealth, even if believed, be insufficient to convict [appellant], given that when the testimony of the victim is excluded, the only evidence is the victim's cell phone, the victim's panties, and the neighbor's statements?
>
> 3. Did the Sentencing Court abuse its discretion when it sentenced [appellant] at the statutory maximum, above the aggravated range of the guidelines to be run consecutively solely in response to the impact of the crime on the victim and without due consideration for all statutory factors?

Appellant's brief at 4.

Appellant first complains that the trial court violated his constitutional rights when it drew an adverse inference from appellant's choice not to testify at trial.

The record reflects that appellant advanced a consent defense at trial. To that end, and in his closing statement, appellant argued that the inconsistencies in the victim's testimony established her consent. At the conclusion of closing arguments, the trial court stated:

> THE COURT: Well, of course, there is [sic] a number of inconsistencies, including how the victim got from the South Side to West Liberty. It was either friends of the victim, friends of [appellant], a random person they hitch hiked with, or if you believe that the victim doesn't remember.
>
> **You know this Court draws no adverse inference whatsoever from the fact that [appellant] did not testify.** However, I have difficulty putting the same amount of weight on [appellant's] consent defense as given through the

- 4 -

police officer since the statement was not cross-examined. And although [appellant] doesn't have to testify, the only evidence we have of consent is not direct evidence.

Obviously, [the victim] makes a very poor decision in this case. However, I find three issues compelling. One is that the cell phone was found in [appellant's] bedroom. Two would be the torn panties. And three, the most important piece of evidence was the 9-1-1 call. That was made shortly after this incident. That speaks for itself.

Notes of testimony, 5/13/15 at 129-130 (emphasis added).

Appellant argues that the trial court's statement that it had "difficulty putting the same amount of weight on [appellant's] consent defense as given through the police officer since the statement was not cross-examined" violated appellant's Fifth Amendment rights. (Appellant's brief at 18.) In support, appellant cites to **Commonwealth v. Hodge**, 369 A.2d 815 (Pa. 1977), for the proposition that "a comment on [appellant's] failure to testify is improper and violative of [appellant's] Fifth Amendment rights." (Appellant's brief at 19.)

Appellant's reliance on **Hodge** is unavailing. In **Hodge**, our supreme court reiterated the rule that an inference or suggestion to a jury concerning a criminal defendant's failure to testify violates the accused's Fifth Amendment rights. **Id.** at 818. Here, appellant was convicted in a bench trial. Moreover, it is axiomatic that when a trial court sits as fact-finder, it is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence. **Commonwealth v. Konias**, 136 A.3d 1014, 1022

- 5 -

(Pa.Super. 2016) (citation omitted); *see also Commonwealth v. Flynn*, 460 A.2d 816, 823 n.13 (Pa.Super. 1983) (stating that this court "presume[s] that the [trial] court, which sat as factfinder in this case, followed its own instructions[]"). Here, the record reflects that the trial court stated that it "[drew] no inference whatsoever from the fact that [appellant] did not testify." (Notes of testimony, 5/13/15 at 129.) Nothing in the record demonstrates otherwise. Therefore, this claim lacks merit.

Appellant next challenges the weight and sufficiency of the evidence. At the outset, we note that it is well settled that when challenging the sufficiency of the evidence on appeal, that in order to preserve that issue for appeal, an appellant's Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient. *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010) (citation and internal quotation marks omitted).

Here, in his Rule 1925(b) statement, appellant frames his sufficiency challenge as follows: "Appellant next alleges that the verdicts as to Counts 1, 2, 3, 4 and 7 were insufficient as a matter of law. In so doing, [appellant] incorporates the arguments set forth paragraph [sic] 12 of this Concise Statement." (Concise statement of matters complained of on appeal, 2/3/16 at 3, ¶ 13.) In paragraph 12, appellant:

> avers that the verdicts as to counts 1, 2, 3, 4 and 7
> were against the weight of the evidence.
> Specifically, [appellant] alleges that the testimony of
> the victim in this matter was wildly inconsistent with

> previous statements and testimony given in this matter, and therefore could not be reliable.

*Id.* at 2-3, ¶ 12.

Appellant's sufficiency claim as set forth in his Rule 1925(b) statement completely fails to identify which element or elements of any of the crimes of which he was convicted were insufficient. Although appellant attempts to challenge the sufficiency of the evidence, he does nothing more than refer us to his weight challenge. Appellant's weight challenge does nothing more than attack the victim's reliability. Therefore, appellant's sole challenge is to the weight of the evidence, not its sufficiency. *See Commonwealth v. Wilson*, 825 A.2d 710, 713-714 (Pa.Super. 2003) (a review of the sufficiency of the evidence does not include a credibility assessment; such a claim goes to the weight of the evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997) (the fact-finder makes credibility determinations, and challenges to those determinations go to the weight of the evidence, not the sufficiency of the evidence).

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> . . . .
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same

- 7 -

> facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> . . . .
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-1055 (Pa. 2013) (citations and quotation marks omitted). "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.Super. 2013).

Here, appellant contends that the trial court "made clear . . . that it did not believe the victim's testimony, as it was inconsistent with previous statements, and simply unbelievable." (Appellant's brief at 25.) Appellant's contention fails to accurately reflect the record. The trial court noted "a number of inconsistencies, including how the victim got from the South Side to West Liberty." (Notes of testimony, 5/13/15 at 129.) The trial court, however, found that a "review of the evidence as a whole clearly demonstrates [appellant's] perpetration of the crimes." (Trial court opinion, 4/12/16 at 10.)

In this issue, appellant invites us to assess the victim's credibility and reweigh the evidence. We decline the invitation. The trial court, as fact-finder, had the duty to determine the credibility of the testimony and evidence presented at trial. *See Talbert*, 129 A.3d at 546 (citation omitted). Appellate courts cannot and do not substitute their judgment for that of the fact-finder. *See id.*

After carefully reviewing the record, we conclude that the trial court's verdict was not so contrary to the evidence that it shocks the conscience of this court. Rather, our review of the record supports our conclusion that the trial court properly exercised its discretion in denying appellant's weight of the evidence claim.

In his final complaint, appellant challenges the discretionary aspects of his sentence.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate

review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 169-170 (Pa.Super. 2010) (citation omitted; brackets in original).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted; brackets in original).

Here, the record reflects that appellant filed a timely notice of appeal and included a Pa.R.A.P. 2119(f) statement in his brief. In this appeal, appellant requests that we review two sentencing challenges. First, appellant contends that the trial court abused its discretion by sentencing him to the statutory maximum based solely on the impact of the crime on the victim. (Appellant's brief at 31.) Second, appellant contends that the

trial court abused its discretion when it imposed sentence without considering all of the statutorily required sentencing factors. (*Id.* at 35.) We must now determine whether appellant properly preserved these challenges.

In his amended post-sentence motion, appellant raised two sentencing challenges. In his first challenge, appellant claimed that the trial court abused its discretion when it imposed sentence without articulating the aggravating circumstances that would warrant a departure from the standard range of the guidelines. ([Appellant's] Amended Post-Sentence Motion Pursuant to Pa.R.Crim.P. 720, 11/2/15 at 3, ¶ 10(c).)[3] In his second challenge, appellant claimed that the trial court abused its discretion because the nature of the offense and the impact of the crimes on the victim alone are insufficient reasons to justify the sentence. (*Id.* at ¶ 10(d).)

The Commonwealth argues that appellant failed to properly preserve his current challenge that the trial court abused its discretion when it imposed sentence without considering the requisite statutory factors set forth in 42 Pa.C.S.A. § 9721(b) for failure to raise the issue in post-sentence motions. We agree. Accordingly, we must now determine whether appellant

---

[3] The record reflects that the trial court entered an order permitting appellant to file amended post-sentence motions 45 days following his receipt of the complete trial transcript. (Order of court, 8/13/15; Docket #14.)

raises a substantial question with respect to his claim that the trial court abused its discretion when it imposed sentence solely on victim impact.

We determine whether an appellant raises a substantial question on a case-by-case basis. ***Commonwealth v. Swope***, 123 A.3d 333, 338 (Pa.Super. 2015) (citation omitted). "A substantial question exists only when an appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citation omitted).

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

***Id.*** at 340 (citation omitted).

Based on the circumstances of a particular case and the extent to which an appellant's Rule 2119(f) statement suggests that the trial court deviated from sentencing norms, a claim of excessiveness may constitute a substantial question. ***See Commonwealth v. Coulverson***, 34 A.3d 135, 143 (Pa.Super. 2011), citing ***Commonwealth v. Perry***, 883 A.2d 599, 602 (Pa.Super. 2005) (concluding that an appellant's excessiveness averments raised a substantial question where the trial court had couched its reasons

for imposing the sentence in terms of the seriousness of the offense and the impact on the victim without considering the appellant's expressions of remorse, desire to make restitution, and lack of a prior criminal record). As such, we will consider the merits of appellant's sentencing challenge.

Here, the record belies appellant's contention that the trial court imposed sentence solely based upon victim impact. The record reflects that at the beginning of the sentencing hearing, the trial court stated that it had ordered, read, and considered appellant's presentence investigation report ("PSI"). The benefit of a PSI indicates that the trial court was aware of appellant's character and circumstances and weighed those considerations when imposing the sentence. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super. 2010) ("Where the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." (internal quotation omitted)). Additionally, prior to imposition of sentence, defense counsel summarized relevant information about the appellant, including his age; prior record score of zero; familial relationships; educational and employment history; and the fact that if he was paroled, he would be subject to deportation. (Notes of testimony, 7/28/15 at 3-4.)

The record further reflects that when the trial court asked appellant if he wanted to make a statement prior to imposition of sentence, appellant

voiced his displeasure with defense counsel and expressed his "concerns about how [his] case was handled." (*Id.* at 4-5.) Appellant expressed no remorse. Finally, we note that because the trial court presided over this case and also acted as trier-of-fact, it was in the best position to not only observe appellant's demeanor at trial, but to also observe the impact his crimes had on the victim, which the trial court described as "senseless" and "vicious" crimes. (*Id.* at 6). We find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2016